# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

KATHY ANN ROSS,

    **Plaintiff,**

                                                    **Civil Action 2:17-cv-169**
                                                    **Judge Algenon L. Marbley**
    v.                                             **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kathy Ann Ross ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff protectively filed her application for Title II Social Security Benefits on December 16, 2013, alleging that she has been disabled since January 29, 2013, due to fibromyalgia, arthritis, nerve damage in her thoracic area, degenerative spine disease, and

bulging discs. (ECF No. 10 at PAGEID## 195-96, 210.) On January 12, 2016, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge Edmund E. Giorgione (the "ALJ"). (*Id.* at PAGEID## 104-25.) At the hearing, Plaintiff, represented by counsel, appeared and testified. (*Id.* at PAGEID## 108-20.) Vocational Expert Jerry A. Olsheski, Ph.D. (the "VE"), also testified at the administrative hearing. (*Id.* at PAGEID ##120-25.)

On February 5, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID## 89-99.) The ALJ noted that Plaintiff met the insured status requirements through March 31, 2017. (*Id.* at PAGEID# 91.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since June 29, 2013, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the severe impairments of fibromyalgia; left intercostal neuralgia; degenerative

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

joint disease of the left shoulder; and degenerative disc disease of the cervical, thoracic, and lumbar spine. (*Id.*) The ALJ also noted that Plaintiff has a right mid-lung nodule and left carpal tunnel syndrome, which he found to be nonsevere impairments. (*Id.* at PAGEID## 91-92.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID# 92.) After step three of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: the [Plaintiff] can frequently stoop, kneel, crouch and crawl, but she is precluded from climbing ladders, ropes, and scaffolds.

(*Id.* at PAGEID# 92.)

In determining Plaintiff's RFC, the ALJ assigned "great and determinative weight" to the opinions of state agency reviewing physician Anton Freihofner, M.D., finding him to be well-qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to limitations. The ALJ found that Dr. Freihofner's assessment was consistent with and well-supported by the evidence in the record as a whole and accepted it as an accurate representation of Plaintiff's physical residual functional capacity. (*Id.* at PAGEID# 93.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a basket assembler and also capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at PAGEID## 97-99.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at PAGEID# 99.)

3

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for judicial review.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the

SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III.   ANALYSIS

In her Statement of Errors, Plaintiff raises three contentions of error. In her first contention of error, she challenges the ALJ's credibility assessment. In her second contention of error, Plaintiff maintains that the ALJ erred in failing to incorporate a limitation in the RFC to accommodate her need for a cane. In her final contention of error, Plaintiff submits that the ALJ erroneously relied upon the opinion of the state-agency physician because record evidence submitted after that opinion was rendered reflects that her conditions worsened. The undersigned finds each of these contentions of error to lack merit and addresses them in turn.

### A.   The ALJ's Assessment of Plaintiff's Credibility

At the hearing, Plaintiff testified that she cannot work due to pain in her "thoracic area" and "inner costal around [her] lung on [her] left side." (ECF No. 10 at PAGEID# 110.) She stated that she needs to "stabilize [her upper body] with a blanket to be able to sit up." (*Id.*) Plaintiff also testified that she told her doctor that her left upper lung and back are in so much pain that she would not know if she was having a heart attack. She said that some days she stays in bed all day with a heating pad around her to stabilize her rib. Plaintiff also testified that she uses her cane when she is out and also around the house, even while walking up the stairs in her home. Plaintiff represented that she cannot watch much television or be outside in front of her home because she cannot endure the noise because "it's too much for [her] body." (*Id.* at PAGEID# 113.) Plaintiff also testified that it is so painful to reach over her head with her left

5

arm that she gets "drenched" in sweat when even doing something as simple as "spray[ing] a little bit of lifter on her hair"; she added that "maybe [that motion is] cutting [her] oxygen or something off." (*Id*. PAGEID# 113.) Plaintiff indicated that she drives "little," explaining that "17 miles up the road is as far as [she goes] by [her]self" and that she "usually go[es] to [the] grocery store." (*Id*. at PAGEID# 116.) Plaintiff testified that she cannot vacuum; that if she cooks she cannot stir because stirring gives her pain; that she cannot use her left hand to do dishes; and that her husband does the housework for her. Finally, Plaintiff testified that the injections she has received have not helped her pain.

The ALJ acknowledged Plaintiff's testimony that her pain was "incapacitating," and concluded that her "primary issue is pain due to fibromyalgia, intercostal neuralgia, and degenerative disc disease of the cervical and thoracic spine." (*Id*. at PAGEID# 93.) He concluded that although Plaintiff's impairments, including her fibromyalgia, "could reasonably cause some symptoms and limitations, the [record] evidence shows that [her] testimony regarding the extent of such symptoms and limitations is not fully credible." (*Id*. at PAGEID# 96.) The ALJ further stated that Plaintiff's complaints "have not been completely dismissed, but rather, have been included in the [RFC] to the extent that they are consistent with the evidence of the whole." (*Id*.)

According to Plaintiff, the ALJ erred by discounting her subjective complaints of disabling pain. More specifically, Plaintiff posits that the ALJ "only considered [her] activities of daily living when evaluating her credibility" and that to the extent he considered other factors, those factors "were actually supportive [of her] subjective complaints." (Pl.'s Reply 2, ECF No. 19.) Plaintiff further submits that the ALJ's "reliance and over-emphasis on the objective

6

evidence in his credibility analysis is inappropriate" given that fibromyalgia often presents no objective symptoms. (Pl.'s Statement of Errors 6-7, ECF No. 11.) The undersigned disagrees.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). The United States Court of Appeals for the Sixth Circuit has established the following test for evaluating complaints of disabling pain. *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then examine:

> (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. The ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal

7

quotation omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Furthermore, in assessing credibility, the ALJ may consider a variety of factors including "the location, duration, frequency, and intensity of the symptoms; . . . [and] the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms . . . ." *Rogers*, 486 F.3d at 247.

Cases involving fibromyalgia "place[] a premium . . . on the assessment of the claimant's credibility." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). "[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. "Nonetheless, a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)). Accordingly, in cases involving fibromyalgia, an ALJ must assess Plaintiff's credibility and "decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain*, 297 F. Supp. 2d at 990.

Applying those standards here, the undersigned concludes that the ALJ reasonably discounted Plaintiff's allegations of extreme and disabling pain. Contrary to Plaintiff's assertion that the ALJ considered only her activities of daily living, review of the ALJ's decision reveals that he also thoroughly considered the objective medical evidence, Plaintiff's activities of daily living, Plaintiff's self-reports to her treating sources, the observations of Plaintiff's treating

8

sources, Plaintiff's treatment and responses to treatment, and the opinions of the state agency reviewing physicians.

With respect to the objective medical evidence, the ALJ concluded that "the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitation alleged by [Plaintiff]." (ECF No. 10 at PAGEID# 96.) The ALJ pointed out that despite an examination note observing that Plaintiff "winced in pain with even light touch over the left lower rib cage," a bone scan performed 5 days later showed no abnormal rib uptake. (*Id*. at PAGEID# 94 (citing PAGEID## 255-56, 278, and 297-302).) The ALJ also pointed out that the August 2013 MRI and an October 2013 revealed mostly mild and some moderate findings. The ALJ also detailed Dr. Chang's findings from Plaintiff's October 17, 2013 visit in which Plaintiff rated her upper and middle back pain as 8/10, reported tenderness to palpation, and displayed a slightly reduced range of motion in her back and neck, but had a negative Neer's test, negative drop arm test, negative empty can test, negative vertical compression test, negative neck Spurling test, and negative straight leg test bilaterally. (*Id*. at PAGEID# 94 (citing PAGEID## 261-271); *see also* PAGEID# 261 (finding that Plaintiff had no limited range of motion in her joints and/or spine; a "normal" ability to do fine and gross manipulation, a "normal" gait, that an ambulatory aid was not medically necessary, and that the symptoms started six years prior to the October 17, 2013 visit).) The ALJ detailed Dr. Luft's examinations. As discussed more fully below, the ALJ also discussed Dr. McDowell's examination findings that Plaintiff ambulated normally without an assistive device, which undermines Plaintiff's testimony that she needs a cane both inside and outside of her home. The ALJ considered the findings from the March 2015 MRIs of Plaintiff's spine and left shoulder, as

well as the June 2015 x-ray of Plaintiff's thoracic spine. Finally, the ALJ considered Dr. McDowell's 2015 treatment notes and examination findings. (*See id*. at PAGEID## 95-96; 383-415.)

The ALJ also considered that Plaintiff's treating sources' observations were often inconsistent with her extreme complaints of incapacitating pain and that these sources often observed her to be in no distress. (*See id*. at PAGEID# 94 (pointing out that although Plaintiff complained that she "felt like one of her ribs was going to come out," Dr. Luft observed that she was in no distress, her neurological exam was normal, and Dr. Luft offered no positive exam findings (citing PAGEID## 258-59)); *id*. at PAGEID# 95 (Dr. Luft noted that Plaintiff was in no distress during July 2014 appointment); *id*. (Dr. Luft noted that Plaintiff was in no distress during December 2014 appointment and offered normal examination findings despite her complaints that her pain had increased).) *See also id*. at PAGEID## 408-09 (although Plaintiff described her pain "as feeling as though her lung is collapsed," Dr. Bartlett noted that Plaintiff "has never had this before, so it is unclear how she would know what this feels like exactly" and further noting that Plaintiff was "[w]ell appearing" and in "no acute distress"); PAGEID# 221 (Dr. Luft noted that Plaintiff was in no distress during August 2014 appointment); PAGEID# 367-368 (Dr. McDowell observed in September 2014 that Plaintiff is "in no distress" and "ambulates to the examination room without assistive device" and has a "normal" gait and "is able to sit comfortably"); PAGEID# 389 (Dr. McDowell observed that Plaintiff "presents in no distress"); PAGEID## 412-414 (during August 2015 visit, Plaintiff rated her pain at 7/10, but Dr. McDowell noted that Plaintiff "presents in no distress" and that her "[f]acial appearance is relaxed"); PAGEID# 585 (during January 2016 examination, Dr. Gibson noted that Plaintiff was

in "[n]o acute distress" and that she was a "pleasant and interactive patient . . . in no acute distress sitting in my office and walking in her room").

The ALJ also considered Plaintiff's treatment and the effectiveness of that treatment. (*See*, *e.g.*, *id*. at PAGEID# 94 (noting that Plaintiff reported that Cymbalta helped with her shoulder pain); PAGEID# 95 (pointing out that Plaintiff reported 40% improvement of her rib pain following epidural injections and that she underwent a nerve block in March 2014); *id.* (noting that Plaintiff had a spinal cord stimulator implanted in July 2014, but reported in December 2014 that it was not giving her much relief); *id*. at PAGEID# 96 (noting that in July 2015, Plaintiff reported 50% pain relief in her shoulders and 30% pain relief in her neck).)

The ALJ also correctly points out that despite her allegations of disabling pain, Plaintiff often rated her pain at a level 3 or 4. (*See, e.g.*, *id*. at PAGEID# 367 (Plaintiff self-rated pain at a level 3/10 in September 2014); PAGEID# 383 (Plaintiff self-rated pain at a level 3/10 in March 2015 and said it was located in her left shoulder, arm, and hand); PAGEID# 387 (Plaintiff self-rated pain at a level 4 and said it was located in the left side of her rib cage in May 2015).) He also references Plaintiff's activities of daily living, including her statements that she is able to drive some, visit with her sister, read, and watch some television.

Finally, the ALJ considered the opinions of the state-agency reviewing physicians and found Plaintiff to be *more* limited than Dr. Mikalove (the initial reviewing physician) opined and accorded "great and determinative weight" to the opinion of Dr. Freihofner. Notably, Dr. Freihofner also concluded that Plaintiff's allegations were only partially credible. (*Id*. at PAGEID# 142.)

In summary, the undersigned concludes that the ALJ's finding with respect to Plaintiff's

subjective complaints of pain finds ample support in the record. In addition, the ALJ's decision makes clear that the ALJ did not rely exclusively on Plaintiff's activities of daily living in evaluating her allegations of disabling pain. The undersigned further concludes that that the ALJ did not err in considering the objective evidence in evaluating her credibility because Plaintiff has impairments other than fibromyalgia that she maintains limit her ability to work. Indeed, this argument is at odds with Plaintiff's third contention of error in which she posits that the March 2015 MRIs "indicate that [her] impairments have increased in severity such that the RFC requires adjustment," (Pl.'s Statement of Errors 12-13, ECF No. 11). As set forth in detail above, the ALJ identified numerous reasons for discounting Plaintiff's credibility beyond the objective evidence, including her own self-reports and the observations of her treating sources. Because the undersigned finds no compelling reason for the Court to disturb the ALJ's credibility determination, it is **RECOMMENDED** that Plaintiff's first contention of error be overruled.

**B.     The ALJ's Determination that a Cane was not Medically Necessary**

Plaintiff's contention that the ALJ erred by failing to incorporate limitations related to Plaintiff's use of a cane is equally unavailing.

If a cane is not a necessary device, it cannot be considered a restriction or limitation on a claimant's ability to work. *Carreon v. Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002). A cane is not medically required if the record reflects that the claimant uses it out of a subjective desire for "insurance." *Id*. Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). "Where there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence." *Bowen v. Comm'r of Soc. Sec.,* No. 3:17-cv-17, 2018 WL 328964, at *3 (S.D. Ohio Jan 9, 2018) (internal quotation marks and citation omitted).

Here, the ALJ noted that prior to being prescribed a cane, Plaintiff was observed using a cane in her *right* hand. (ECF No. 10 at PAGEID# 95.) He further acknowledged that she was prescribed a "quad cane" by Dr. Luft on August 18, 2014. (*Id*.) The ALJ concluded, however, that the cane was not medically necessary. In support of this conclusion, the ALJ pointed out that Dr. Luft's treatment notes contained "no positive exam findings." (*Id*.) The ALJ also pointed out that *after* being prescribed a cane, on September 8, 2014, Dr. McDowell, upon physical examination, observed that Plaintiff's gait was normal and that she did not use an assistive device. (*Id*.; *see also* PAGEID# 368 (observing that Plaintiff "ambulates to the examination room without assistive device" and that her "[g]ait . . . is normal" and that she was "able to sit comfortably").) In addition, the ALJ observed that "the medical records do not demonstrate that [Plaintiff] actually received a quad cane and/or that she ever used it." (*Id*. at PAGEID# 96.) The ALJ further reasoned as follows: "There were a few notations that she used a cane. However, these were inconsistent. Moreover, no treating physician ever stated that [Plaintiff] had a medical necessity to use a cane or quad cane anytime she ambulated." (*Id*.)

The undersigned concludes that substantial evidence supports the ALJ's determination that Plaintiff did not medically require a hand-held assistive device. As the ALJ points out, after being prescribed a cane, records of Plaintiff's cane use are inconsistent, and her medical providers have observed her ambulating normally without a cane. (*See id*. at PAGEID# 368

13

(normal gait without cane); PAGEID# 584 (observing Plaintiff walking with a cane in her *left* hand); PAGEID# 413 (Plaintiff indicates "no problems with walking" and "no standing or walking limitations at all"); *see also Sims v. Comm'r of Soc. Sec.*, No. 2:16-cv-342, 2017 WL 4236578, at *8 (S.D. Ohio Sept. 25, 2017) (ALJ reasonably rejected the opinion of treating physician who had prescribed a cane and opined that the claimant required it to ambulate where treatment notes reflected that the claimant walked normally without an assistive device). The ALJ also reasonably considered that no physician offered an opinion that Plaintiff needed a cane or had described the circumstances for which it would be needed. *See* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *3-4 (E.D. Mich. Sept. 25, 2017) (ALJ reasonably concluded that claimant failed to establish need for cane despite claimant's testimony that she was prescribed a cane and documentation that she received a cane where no medical source offered an opinion that she needed the cane and no medical documentation described the circumstances for which she required a cane). Thus, the undersigned rejects Plaintiff's contention that a doctor's prescription for an assistive device amounts to an opinion that a cane is "medically necessary" within the context of evaluating claims for social security benefits. *See* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (rejecting claimant's assertion that the ALJ failed to account for her use of a cane, stating that nothing in the physician's "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work" (citations omitted)).

It is therefore **RECOMMENDED** that Plaintiff's second contention of error be

**OVERRULED.**

**C.     The ALJ's Reliance upon the Opinion of the State Agency Physician**

In her final contention of error, Plaintiff submits that the ALJ erroneously relied upon Dr. Freihofner's opinion in assessing her RFC. She reasons that the ALJ's reliance was improper because record evidence submitted after the opinion was rendered reflects that her conditions worsened. Plaintiff specifically highlights the results of her March 2015 MRIs to argue that her impairments have worsened such that the "RFC should be adjusted." (Pl.'s Statement of Errors 13, ECF No. 11.) She also points out that she underwent additional treatment. Plaintiff appears to argue that the ALJ "impermissibly 'played doctor'" because he declined to call upon a medical expert to evaluate the additional MRI and x-ray evidence. (*Id.*)

Plaintiff's arguments fail to persuade. The ALJ explicitly considered the very evidence upon which Plaintiff relies and concluded that "the evidence received into the record after the reconsideration determination concerning [Plaintiff's] physical status did not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning the claimant's physical limitations." (ECF No. 10 at PAGEID# 93.) As the Commissioner points out, the ALJ did not interpret raw medical data, but instead considered and relied upon the findings of the radiologists who interpreted the diagnostic reports. (*See id.* at PAGEID# 95 (summarizing the findings of the radiologists).)

The ALJ properly considered these diagnostic findings, as well as Plaintiff's treatment records generated after April 2014, in evaluating her allegations of pain and assessing her RFC. Although Plaintiff maintains that the March 2015 diagnostic findings require the inclusion of greater RFC limitations, she fails to explain why this is so. *Cf. Higgs v. Bowen*, 880 F.2d 860,

863 (6th Cir. 1988) ("The mere diagnosis of [the condition] . . . says nothing about the severity of the condition." (citation omitted)). As the ALJ pointed out, during a March 2015 appointment, Plaintiff rated her pain at only a level 3/10. (ECF No. 10 at PAGEID## 95, 383.) During a May 2015 appointment, Plaintiff complained only about pain in her left rib cage and rated it at a level 4/10. (*Id*. at PAGEID# 387.) The ALJ also pointed out that in July 2015, Plaintiff reported that her pain had improved with the epidural steroid injections by 50% in her shoulders and 30% in her neck. (*Id.* at PAGEID## 96, 402.) In August 2015, Plaintiff reported that she had "no standing or walking limitations at all" and that she could lift "medium to light weight objects." (*Id*. at PAGEID# 413; *see also id*. at PAGEID# 584 (In January 2016, Dr. Gibson observed that Plaintiff was "in no acute distress sitting in [his] office and walking in [the exam] room" and that she had a negative Spurling test).)

Because the ALJ's conclusion that the evidence received in the record subsequent to Dr. Freihofner's opinion did not warrant modification of the RFC is supported by substantial evidence, it is **RECOMMENDED** that Plaintiff's final contention of error be **OVERRULED**.

## IV. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

16

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE